Good morning and may it please the court. My name is Celia Ruman and I represent Anthony Wayne Hamilton. I'm gonna try to reserve two minutes for rebuttal in this case but I'll keep track of my time. Obviously Mr. Hamilton has raised a number of issues on appeal. Given the time constraints I thought it might be most productive in this setting to discuss the areas where the law is in the most flux. Those being the questions of Hobbs Act and the First Step Act. Obviously if the court has questions on any of the other issues I'm happy to At some point I think we would also be interested in your addressing significance if any at sentencing the judge says are you satisfied with your lawyer? He says no and the judge just goes on. I'll get that I'll get to that as well. Thank you your honor. As to the Hobbs Act obviously there's a lot of law that has to be addressed and the first are the decisions of this court that discuss in any way whether the Hobbs Act robbery constitutes a crime of violence and for many reasons we argue that those cases should not control the decision here. Those cases with all due respect don't demonstrate the careful categorical analysis of the elements that's required by Leocal. Beginning with the Mendez case in 1993 in that case this court was addressing whether conspiracy to commit Hobbs Act robbery constitutes a crime of violence and in answering that question this court in one sentence said that it is indisputable that Hobbs Act robbery constitutes a crime of violence. There's a number of reasons why that shouldn't be indisputable. The first is that Mendez being from 1993 predates such cases as Johnson and DeMaia and Davis and Stoeckling so there's been a lot of law that has instructed this court on how to analyze whether Hobbs Act robbery constitutes a crime of violence. Moreover in Mendez this court did not answer whether conspiracy to commit Hobbs Act robbery was a crime of violence under the force clause. It analyzed whether it was a crime of violence under the residual clause. Given that it's dicta and shouldn't control. Then turning to this court's decisions unpublished decisions for example in Howard and Jay. Obviously as unpublished decisions they're not binding and this court can look at them though for the analysis but we argue that those cases should not control for a number of reasons. For example in Howard. They don't control but they can be looked to for analytical guidance and and I don't think they are persuasive in that realm either. In Howard this court analyzed whether a Hobbs Act robbery was a crime of violence by comparing it to bank robbery and it said bank robbery is a crime of violence in its least culpable way of being committed by intimidation. Intimidation in bank robbery means fear of bodily injury. Hobbs Act has a fear of injury clause and therefore Hobbs Act robbery is analogous to bank robbery and is a crime of violence. However that ignores the differences and there are many differences between a Hobbs Act robbery and a bank robbery. Hobbs Act robbery as the Supreme Court made clear should be analyzed the broadness of the purpose is consistent with Congress's intent to apply this statute very broadly and in looking at the language of Hobbs Act robbery it encompasses robbery committed by fear of future injury to intangible property. That least culpable way of committing a Hobbs Act robbery takes it outside of the bank robbery context. In discussing that in the Howard case and in the Jay case this court looked to SELFA which is this court's decision on bank robbery and what's interesting is again that case was not analyzing bank as a crime of violence under the guidelines. Moreover it's ironic in some way that this court repeatedly turns to SELFA on the questions of Hobbs Act when SELFA itself specifically says that it in that decision it need not determine what all whether all robberies are crimes of violence and that's consistent with for example the Leocal requirement that the elements be analyzed carefully. Counsel I think I counted it was seven other circuits even after Johnson have held that Hobbs Act robbery is a crime of violence. Is there any Court of Appeals decision going your way on that question? I don't think there is any Court of Appeals decision going my way and I think that's in large part because there seems to be a lack of focus on the actual elements of the crime. For example interestingly in its 28 J letter the government cites to the Mathis case out of the Fourth Circuit and it was surprising to me that the government cited to the Mathis case given that in its responsive brief the government said that one of our arguments was invalid. We had argued that because a Hobbs Act robbery includes intangible property within its confines it doesn't involve the kind of violence that's necessary for a for a 924 C enhancement. It then cites the Mathis case and what the Mathis case says is that Hobbs Act robbery does include intangible property and what that instructs it makes makes interesting I mean it was a bit of a rabbit hole looking into this because Stokeling the most recent Supreme Court case to analyze whether a robbery statute constitutes a crime of violence was clear that there must be a physical confrontation or struggle for a 924 C enhancement to apply. It's difficult to imagine a situation where there's a physical struggle over an intangible property and that's what Stokeling seems to suggest. Stokeling doesn't suggest it makes very clear there must be a physical confrontation or struggle. Moreover, as I pointed out in my responsive brief, under a Hobbs Act robbery fear of future injury. So if I call someone and threaten them to do something in the future that constitutes a Hobbs Act robbery under the terms of the statute itself and this court's jury instructions I think the government in a 924 C letter also submitted this court's jury instructions and this court's jury instructions are taken directly from the language of the statute and instruct juries and juries are presumed to follow the instructions they're given that fear of a future injury is injury for Hobbs Act purposes. That is not the kind of violent struggle that Stokeling the kind of physical confrontation and that struggle that Stokeling focused on. Turning to the First Step Act we raised two issues. The first is a standard of review and the second is whether the First Step Act applies to Mr. Hamilton's case. We urge this court to adopt a de novo standard under the Escobar case that because it presents a pure question of law the government has not explained why that standard should not govern but whether it's de novo or plain error the Act itself does not state whether it's applicable to the cases where a sentence has not yet been final. What it uses is the word impose and the government has focused on the word imposed. In its responsive brief the government does not address or mention the Supreme Court decision in Henderson that explains that the law to be applied in determining whether there's error is the law as it Mr. Hamilton's argument. Additionally in the 924 C letter that Mr. Hamilton has submitted to this court we urge this court to adopt the reasoning of the Sixth Circuit in the Clark case. In that case the Sixth Circuit was analyzing the question of whether a reduction or a change in the application of the safety valve provision should apply to cases that were pending and interestingly the statute that changed that provision was very similar to the language at issue here. The law there said that the subsection applies to all sentences imposed on or after the date of enactment. You know I was reading your brief are you did you make this argument in your brief that imposed is really a question of finality rather than a question of what the at the time that this sentence was announced by the sentencing judge? We argued that it does not that that this court should conclude that imposed means after the appeal is finalized. I didn't have the Sixth Circuit case at that time which is why I submitted it in the 28 J format. Okay. But we think that that case should be controlling. Turning to this court's question about what happened in this case at sentencing. Here there was no doubt that there was a breakdown of communication such very severe. The district court asked Mr. Hamilton whether he was satisfied with services of his lawyer. He said no. He had just been convicted on a large number of counts. I mean you know so to say that he was not satisfied with how his trial had gone is you know a not very surprising and B not necessarily indicative of a breakdown in communication is it? Well I think there's two responses to that. The first is that I've been a trial lawyer in federal district court since 1991. I've lost a number of trials and the court always asks at sentencing whether you're satisfied with the services of your counsel and it doesn't happen in my experience with any regularity that people say no at that point. But even if that were the case that wasn't the only information the district court had because counsel advised the district court that she had no additional information to provide the court other than what was in the pre-sentence report to consider at sentencing. That she told the court that there was there was a breakdown. She couldn't come up with anything else because their relationship had fractured as was supported by Mr. Hamilton's statement. Given that even if there was a chance that that was what was going on this court's decisions in Velasquez and that when that happens the court should ask should make inquiries. It should know Dan Daniels is about what the court should do when it's given a motion presented with a motion to substitute right that is there any case that says that an expression of dissatisfaction unaccompanied by an actual motion triggers a duty to inquire? I think the factual scenario that generally is before the court is there is a motion that's presented. That motion I think that sort of must be true because you're dealing at some point with somebody who's essentially saying look at me as a pro se at this point. I don't like my lawyer anymore and at least my experience in federal sentencing is that ninety-nine percent of the time people are satisfied because their lawyer sat with them. They've gone through pre-sentencing preparation. They've really worked it and come up with a strategy. Just as a district court judge, I mean for me it's just a giant red flag. It may just be they're having a bad day and we talk about it a little bit more and they're, well he didn't call me back right away and I need fifteen more minutes and we'll go take that and talk a little bit and then everybody's happy and they come back and things are fine. I take it that something more should have happened. What should we do about it? Not what should the district judge then have done about it, but what should we do about it now? Well I think given that there's no record here, I mean I think the court has a couple of options. It could send this case back for additional fact-finding as to what was the nature of the breakdown to appointment of new counsel for Mr. Hamilton. The other option is to send it back for re-sentencing with counsel that doesn't have such a fractured relationship with the defendant at the time. And how do we know that there was a fractured relationship? I'm looking at page 17 I guess of the page 7 of the sentencing transcript and he's asked are you satisfied with the representation? No. And then the court asks defense counsel any additions to the pre-sentence report and she says you know nothing that Mr. Hamilton has communicated to me. She doesn't say because we're not talking or being because our relationship has broken down. She just says he hasn't given me anything else to add. I think what she says is that you know obviously Mr. Hamilton's not satisfied or not happy with my services at this point. I don't have anything additional to add. I think what that raises is the problem here is there were no questions asked. And I think even that I would ask this court at a minimum to send it back so that those questions could be asked and answered. The counsel for Mr. Hamilton presented no written request for variances, although the court at the district court did give something of a variance at the sentencing on the robberies themselves. Obviously he couldn't on the 924 C's. I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning your honors and may it please the court. My name is Alexander Samuels. I'm an assistant U.S. attorney in Phoenix and I'm here on behalf of the It's a harsh sentence your honor. It's undoubtedly a harsh sentence. Well it's a harsh sentence because you charged him harshly. I mean this sentence was really in control of the prosecutor's office based on what you chose to charge. It wasn't supposed to charge something that was going to produce, at least on your view of the case, 270 years. It was in some ways and I think... It was in many ways. At least in our district it's very rare that someone would face what is effectively a life sentence for a string of robberies like this. What I would say is it's also extremely rare in the first case I've heard of where someone committed 36 robberies and was convicted of 11 of them. Well you charged 11. You say that there's 36. We know that there were 11, right? Indeed. He was charged with 36 and we only proceeded to trial on 11. And I think 924 C prescribes harsh penalties for this sort of thing. You mentioned that no one was hurt and you're right. No one was physically hurt. But I do think it's worth taking a look at the transcript to see the impact that this had on some of the victims. I mean this is not a homicide or a child sex assault or some of the other cases. Well they were terrified. I get that. But we had a victim who urinated herself. We had multiple victims who said this experience stuck with them for the... No I understand. At least for the years up until trial. I read all of this. I understand. The people were, and for a very good reason, terrified. They were. And I think it's an important thing to note and I think there were important harms that were caused here. And also in terms of the prosecutor's discretion here, I think it's at least worth noting, Mr. Hamilton was offered a chance to escape what was effectively a life sentence, both before trial and after. This is in the record. He was offered a plea agreement that would have provided a sentence of no more than 30 years and no less than 25 before trial. He rejected that plea agreement. Even after trial, after these convictions and sentences, or after the convictions happened, but pre-sentencing, he was offered a plea agreement that would have stipulated to a 35-year sentence if he agreed to cooperate against the other robber who was believed to be his brother. He again rejected that opportunity. So I get that the U.S. Attorney's Office had discretion here. And I believe it was exercised properly and I think this sentence... Well I mean whether it was or not, I mean that's not our business. Indeed it's not, but I wanted to make sure to address Your Honor's question. And on that same front, I would like to jump right into the issue that you've raised, Your Honor, which is the issue about sentencing. And I want to address a couple things on that front. The first is that I think Judge Miller's correct. There really wasn't a motion made here, and there's no case out there that says that the district court's obligation to inquire further is triggered simply by a one-word no in response to this standard question. On the other hand, why ask the question if the answer no means nothing? And I think that's a fair question to ask, Your Honor. This is a standard question that's asked. It is often relevant. It's a required question. And it's often relevant to proceedings that occur later on in the case in a 2255 or an allegation of ineffective assistance. It's used by both sides depending on what the answer is. It's relevant to the credibility of the whole process. It certainly is, Your Honor. But I think what's important to note is that the district court had other important information in front of it on the question it had to decide. And the question here is a narrow one, which is, was there a complete breakdown in the communication between defendant and counsel that prevented effective assistance? And the answer is we don't know. Well, I think the answer is that the district court here did know because it had other information in front of it. It had just observed moments before these two individuals conferring in the courtroom, and that's documented in the transcript. And it also had heard from the- What did they say? We don't know what they said. All right. So what's the point of raising that? Well, the point is to show that there was some communication between them and also that defense counsel had noted that she had gone over the presentence report with the defendant. The judge here, I think having some legitimate concern about the fact that communication was apparently strained between them, inquired of the defendant in particular in an extended colloquy and said, Mr. Hamilton, I've asked- Isn't the answer to that question just more fundamental? When you say no, doesn't it implicate the entire right to counsel issue? Isn't it essentially plain error to not follow up at that point? I don't think so because the question that was asked was not about whether there had been a breakdown in communication or whether the defendant had received effective assistance, which are the two things that this court needs to look at based on the question presented. The question asked was whether he was satisfied. And this court's case law, I think, is pretty clear that satisfaction is not the standard. Well, you can ask this guy, has there been a complete breakdown in the attorney? Are you going to go through all that with a perhaps unsophisticated person rather than just do your job and go forward and follow up when a person who's not going anywhere says I have a problem? Well, I think the judge did take some steps here to ask Mr. Hamilton and make sure that the issues that he wanted to raise had been raised and that he understood the proceedings and all the things that would impact the sentencing here. In talking about the impact of the sentencing here, it's important to note 257 years of this 260-year sentence were mandated, and the judge actually varied downward by seven years on the only counts on which the district court had discretion. So it's not clear to me at all how ineffective assistance could have been rendered, but I want to address the communication point. Well, was the First Step Act known at that time? It was not. The sentencing, I think, was approximately a year before this First Step Act. It hadn't been in process. It hadn't been discussed. It wasn't an issue at all. No, it was not, Your Honor. And addressing the communication part, the district court here did inquire of Mr. Hamilton. I want to make sure that you... Sorry. Is what you're saying essentially because there was very little discretion, the judge did not need to inquire further once Step 1 of the possible breakdown of the attorney-client relationship issue has been raised? Well... Is that the argument? I think there's a couple arguments. Is that one of them? There's two prongs here, and I think the argument says... One of them? ...to both prongs, yes. Okay. But I do think that the deeper focus here should be on whether there was a complete breakdown in communication. And that's usually where the deeper focus is in these cases that have been in front of this court. The district court here followed up with Mr. Hamilton and asked, I want to make sure that you've had a chance to talk to your lawyer, get any questions answered, raise any issues that you want to raise. And in response to that, Mr. Hamilton said, the only issue I wanted to raise was the one that he raised in his pro se objection. It's important to note, we know that he had communicated that to his lawyer and talked about the reasoning for it, because his lawyer talked about that at sentencing as well and said, I didn't raise this issue, Judge, because I had reviewed documentation relating to that offense. Presumably she had seen corroboration of the information that was in the pre-sentence report. The attorney here also noted the reasoning that Mr. Hamilton wanted to raise that issue and talked about how Mr. Hamilton had concerns about his custody level and things of that nature. So the district court would have known for certain, based on those answers, that there was not a complete breakdown in communication. The relationship may have been strained. And this record is not perfect. And this court has said before, though, that the record need not be perfect. So in Smith, for example, this court affirmed, even where the issue was clearly raised, even where defendant moved for a new lawyer and asked for one specifically, and the district court conducted no inquiry whatsoever. And in that case, they said, look, we would have preferred to have a better record here. This is not perfect. But the question is, is the record sufficient for the district court to have determined whether there was a complete breakdown in communication that prevented effective assistance? And in that case, they found that even without any hearing, even without any questioning, that there was a sufficient record. Based on the fact that there had been a trial and that the court had had a chance to observe defendant and counsel communicating during the trial, based on the fact that there had been a prior request for substitute counsel, as was the case here. And even where hearings had been held, this court has sometimes commented that there could have been a more extensive conversation with defendant and counsel. In Corona Garcia, for example, the court noted that based on the limited inquiry that was made, that there was a limited conflict. What you've indicated previously is essentially speculation. We don't know what the court observed. And we do know that once you have convictions, that you're sort of step two in terms of your relationship with your client. And, you know, it's a different situation, different concerns, different issues come up. Certainly. I don't mean to imply that you couldn't have a breakdown after trial before sentencing. Obviously, that could happen. Reyes-Basque is another case from this court that addressed that sort of situation. And, again, it's relevant on a couple fronts here. There, the court held that the fact that the motion was made 10 days before sentencing was not particularly timely. It was another factor the district court could consider in denying the motion. And, again, there, a motion was actually made there. There was no motion made here. There was no request for substitute counsel made here. And we're not saying that Mr. Hamilton, acting pro se, needed to use some sort of magic words and file on pleading paper a motion for substitute counsel or a motion to determine counsel. But he knew how to ask for a new lawyer. He'd done it before. And he made no such request here. It's also worth noting that in the pro se document he filed with the district court, he not only raised the issue about his child abuse offense that he had wanted to contest the facts on. He raised another issue, which is that he wanted sentencing to happen as quickly as possible. And the district court took note of this and mentioned it at sentencing. The only other issue he mentions in that letter is he said, my attorney has raised the possibility of a continuance, and I really don't want that because I don't like the conditions I'm currently in in my pretrial detention facility. I want to be assigned to a BOP facility. And he talked about how he thought that that would be better for him. So I think based on that, the district court may well have also thought that Mr. Hamilton would have preferred to go forward with sentencing, knowing that with a new attorney, he would have had to spend another few months in this facility and have a new attorney get up to speed on that. So if this were an ineffectiveness claim, ordinarily we would say that's not, we won't consider that on direct appeal and you can raise that on 2255 where the facts can be better developed. And I wonder if that wouldn't also be a more appropriate approach here, given the factual questions. Does the government have a view on that? Well, I think certainly there are portions of this that could be raised as an undoubtedly that's true. I think if the court has concerns and thinks that a motion to substitute really was raised here that triggered the district court's obligation to inquire further, I think in terms of fact finding, the remedy that would be appropriate here would be a remand to the district court for the district court to conduct that fact finding, not necessarily to vacate the sentence, certainly not to vacate the convictions as this all occurred in the context of sentencing. I think the appropriate remedy. But if we were to remand, why not vacate the sentence? And then if the district judge is satisfied that everything's fine, then the judge can reimpose the sentence. Well, I don't, I think the answer is there's no reason to re-proceed with the sentencing if there was never, in fact, a problem here and if Mr. Hamilton never, in fact, would have needed new counsel here. At the moment, we don't know. Correct. But I think this court could craft a decision that tells the district court to go conduct this fact finding. And if it finds that there was a breakdown in communication to resentence Mr. Hamilton, or if not, to. But that actually moves into the question I've got about the First Step Act. Certainly. What does imposed mean in terms of timing? Does imposed mean when the district judge announces the sentence? Or does it mean, in terms of timing, when the conviction and sentence becomes fine? Imposed means when the, when the sentence was actually imposed. That doesn't work. I mean, when the district judge announces the sentence? Correct. Correct. And I apologize. That was a bit circular. Other courts have looked at this and have said that district courts are in the business of imposing sentences. Appellate courts are in the business of affirming them or vacating them. Other courts have looked at this in the context of the applicability of the First Step Act? Correct. So two courts have looked at this exact provision in Section 403 of the First Step Act. That's the Tenth Circuit and the Fourth Circuit. All of this was cited in a 28-J last week. Those are slightly different in that they were not cases that were pending on direct appeal. But four other circuits, all in published opinions, have looked at the identical language of Section 401 of this First Step Act. Literally the same provision, just applied to a different context. And in four published opinions, four separate circuits have determined that imposed means imposed by the district court. Most importantly, one of those circuits is the Sixth Circuit. And so to the extent there's this new argument here that Clark somehow provides Mr. Hamilton some relief, the Sixth Circuit, which was the court that decided Clark, has actually expressly decided that that is not the case and that in the context of the First Step Act, imposed means the time of sentencing. With that, Your Honors, unless you have any other questions. I wouldn't mind a response to the argument that the Hobbs Act is so broad in some of its applications that it's not a crime of violence. Certainly, Your Honor. I think I'd like to know a couple things on that front. One is the Hamilton's counsel mentioned earlier that SELFA was a guidelines case, the bank robbery case. Watson, which has reaffirmed that recently, actually was a 924C case. So this court's case law is clear that bank robbery is a crime of violence in the context of 924C. There's other decisions, carjacking, other robbery statutes under federal law, and other circuits have held that just as this court did in an unpublished decision in 2016, that the bank robbery decisions are binding in this context, that these provisions are sufficiently analogous that you simply can't escape the reasoning of those decisions, that intimidation is sufficient to constitute a crime of violence. And I think it's worth noting the Hobbs Act has been around a long time, and it is a statute that is used a lot. You saw there are a lot of cases cited in the briefs just within the last few years. This defendant, nor any other defendant in the numerous circuits that have decided this question, no one has produced a case in which Hobbs Act robbery was committed in a nonviolent manner. All of the cases produced are in the extortion context, and other courts have rejected the attempt to conflate the two. And this court in Watson said in the bank robbery context, robbery and extortion are different things, and you cannot conflate those two things. And here's a question that's really irrelevant to any decision that we might make. Why did the feds go forward with the Hobbs Act instead of leaving it to the states to do it as an ordinary state robbery case? Happy to explain, Your Honor. We don't do a lot of Hobbs Act robbery cases in our district. And this is irrelevant to any decision we might make. I'm just curious. It still might be interesting, I guess. The answer is because of the extent and the nature of these particular crimes. As I mentioned, there were 36 crimes that were actually connected to Mr. Hamilton and that he was charged with originally. Because of the ongoing nature of this robbery spree and the fact that there were so many of them in such a short period of time, the FBI got involved in the investigation of this case. That happened about halfway through. That happened in January of 2016. Up to that point, Phoenix Police Department and other metropolitan police departments were investigating, and it probably would have been a state case. But once the FBI got involved, and because of the extent of this, that is how it ended up making its way to federal court. And was that then a joint decision between the U.S. Attorney and the local DA? Who made the decision? You know, I wasn't trial counsel, and I don't know for sure in this particular case. I can tell you it is sometimes the case that we will talk to them about who's going to take the case. And sometimes it's simply more a matter of the fact that our federal partners have taken a case, and we've decided to take it at that point as well. I don't know exactly what happened here. Thank you. Thank you. You're down to 50 seconds. Bonnie, would you put two minutes on the clock, please? Thank you, Your Honor. I just have a couple of points that I'd like to make. The bench asked about when the First Step Act was considered. I've looked at the legislative history, and I believe it dates to 2017 was when it was first considered by Congress. Obviously, Mr. Hamilton was sentenced in 2017, so that was a live issue that was being considered at that point. The government talks about that there wasn't a complete breakdown, and it points to the fact that there's conversation. I guess it depends on how one defines a breakdown in communication with a client. Simply saying words does not, I think, an attorney-client relationship make. And I think here the record is so unclear about what was going on between counsel and Mr. Hamilton that it should have fact-finding before this Court rules. I would note, as the government did, that Mr. Hamilton in the past had made a motion for . . . Defense counsel has an independent obligation also when his client says no to say, may I have a moment, Your Honor, or this is something we need to look into? I believe defense counsel does have that obligation. Obviously, it didn't happen here. And the concern that there wasn't a motion filed. Well, Mr. Hamilton, after he filed a motion previously in the case to have new counsel appointed, was specifically told by the district court that the court was disinclined to grant any future motions on that issue. And so this mentally ill defendant who's dealing with the court has told him, I'm not going to do it again. It's unlikely he's going to file another motion for new counsel. On the question of the First Step Act, none of the cases that the government has cited that they say uniformly go against Mr. Hamilton have addressed the conflicts between what law will apply that we've discussed. Finally, on Hobbs Act, I would note that no cases that I could find have addressed the elemental difficulty in Hobbs of future injury, that future injury can be a basis for a Hobbs Act robbery, and how those are consistent with the Stoeckling requirement of a violent conflict or struggle. With that, unless the court has any questions, I will submit and ask this court to reverse and remand Mr. Hamilton's case. Okay. Thank you very much. Thank you. Thank you both sides for your helpful arguments. United States versus Hamilton submitted.
judges: W. Fletcher, Miller, Pregerson